THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: September 30, 2019



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Dawn L. Schroeder,                                                 Case No. 17-27289-gmh
    f/k/a Dawn L. Voss,
    a/k/a Dawn Voss,

                Debtor.                                                    Chapter 13

**DECISION AND ORDER ON (1) RICHARD VOSS'S OBJECTION TO DEBTOR'S REQUEST TO MODIFY CONFIRMED PLAN AND (2) DEBTOR'S OBJECTION TO CLAIM NUMBER 4 OF RICHARD VOSS**

Dawn Schroeder and her then-husband, Robert Voss, borrowed money from her former father-in-law, Richard Voss, in 2006. Schroeder and Robert Voss signed two promissory notes in the original principal amounts of $100,000 and $39,900 and granted Richard Voss a mortgage on their residence located at 481 Hallman Street, Berlin, Wisconsin, to secure repayment of the loans. Schroeder and Robert Voss divorced, and Schroeder is now the sole owner of the residence. She commenced this case under chapter 13 of the Bankruptcy Code in July 2017.

Richard Voss timely filed a proof of claim for $204,099.85 in October 2017. Claim No. 4-1. The proof of claim states that the debt is secured by Schroeder's residence in the amount of $55,100 and that the $148,999.85 remainder is unsecured. *Id.*

Schroeder's chapter 13 plan provides for Voss's mortgage claim by stating that the she will seek to modify the obligation through the court's Mortgage Modification Mediation program, and if mediation fails, will amend the plan to "address" the claim:

> Debtor will participate in the . . . Mortgage Modification Mediation Program. As such, the Trustee shall not pay on any claims for Debtors' mortgage on property located at 481 Hallman Street, Berlin, WI 54923. Upon successful completion of the mortgage modification, all mortgage claims, including any arrearage claim, will be addressed and paid outside of the plan. If mediation is unsuccessful and there is no mortgage modification reached, Debtors will file a feasible plan to address the mortgage claim.

ECF No. 8, §10. Voss did not object to confirmation of the plan. The court confirmed it after the deadline for filing proofs of claim expired. ECF No. 39; see also ECF No. 6. Schroeder and Voss did not agree to modify the obligation.

Voss then filed an amended proof of claim in January 2019. Claim No. 4-2. The total amount of debt remained the same, but the amended proof of claim states that the debt is secured by Schroeder's residence in the amount of $175,000 (increased from $55,100) and that the $29,099.85 remainder (reduced from $148,999.85) is unsecured. *Id*.

Schroeder objected to Voss's claim arguing that (1) the amended proof of claim overstates the amount of the debt, and (2) Voss's attempt to increase the secured amount of the claim comes too late and should not be allowed. ECF No. 58. The parties subsequently stipulated that the total amount of the claim is $109,886.36. ECF Nos. 73, at 1, & 76, at 3. The amount of the secured claim remains in dispute.

Schroeder also filed a request to modify the confirmed plan. ECF No. 65. The plan if modified would pay $55,100 on Voss's secured claim as follows: "$500 per month until [the] claim is paid in full with a lump sum within 3 months of the

confirmation of this amended plan." *Id.* at 2. The modification provides for 6% interest on the $9,674.37 balance due on the $39,900 note but "does not provide for interest" on the remainder of the secured claim (due on the $100,000 note). *Id.*

Voss objected to Schroeder's request to modify the plan. ECF No. 68. He contends that the plan must pay his claim in full. (The chapter 13 trustee objected that the request "has not been proposed in good faith [as required by] 11 U.S.C. §1325(a)(3)." ECF No. 66, at 1. The court will separately adjudicate the trustee's objection.)

To adjudicate Schroeder's dispute with Voss, the court must answer two questions: First, may Schroeder modify the confirmed plan to pay only Voss's allowed secured claim? And, second, if Schroeder can so modify the confirmed plan, may she pay Voss the amount of the secured claim stated in his original proof of claim ($55,100) or must she pay Voss the full amount of the claim (stipulated to be $109,886.36) because his amended proof of claim states that the collateral is worth $175,000?

I

A

Voss objects that Schroeder cannot modify the confirmed plan to pay only the amount of the secured claim as stated in his original proof of claim because such treatment offends the "anti-modification" clause in 11 U.S.C. §1322(b)(2).

Section 1322 sets forth the required and allowed terms of chapter 13 plans. Subsection (b)(2) generally provides that a plan may "modify the rights of holders of secured claims". §1322(b)(2). Under this general grant of authority, a chapter 13 plan may provide for a secured claim by paying the holder of the claim an amount limited to the holder's interest in the bankruptcy estate's interest in the collateral—that is, the amount of the allowed secured claim under 11 U.S.C. §506(a)(1), rather than the secured amount under nonbankruptcy law—and relegating the holder's remaining rights in the claim to those afforded to holders of unsecured claims. For example, unless a statutory limitation applies, a chapter 13 plan can provide for a $75,000 claim secured by $50,000

in property by paying the holder of the claim the $50,000 value of his allowed secured claim in the manner required by §1325(a)(5) and providing for the $25,000 remainder of the claim as an unsecured claim, e.g., by paying the holder the pro rata share of the payments under the plan to holders of allowed unsecured claims.

Section 1322(b)(2)'s general grant of authority, however, does not authorize a chapter 13 plan to modify the rights of a holder of "a claim secured only by a security interest in real property that is the debtor's principal residence". Known as the "anti-modification clause" in bankruptcy parlance, this limitation in §1322(b)(2) means that a chapter 13 plan generally must pay the holder of an allowed secured claim "secured only by a lien on the debtor's principal residence" the amount secured under nonbankruptcy law, typically the full amount of the debt. See *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 331–32 (1993). Section 1322(b)(2), including its anti-modification clause, also applies to requests to modify a confirmed chapter 13 plan under 11 U.S.C. §1329. §1329(b)(1).

But the anti-modification clause does not prohibit the modification of **all** claims secured only by a security interest in the debtor's principal residence: §1322(b) states that it is "[s]ubject to subsections (a) and (c) of [§1322]", and §1322(c) applies "[n]otwithstanding subsection (b)(2)". Schroeder depends on §1322(c)(2) to bifurcate Voss's claim—to pay Voss the amount of his allowed secured claim under §506(a)—notwithstanding the anti-modification clause.

Section 1322(c)(2) provides as follows:

> [I]n a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

Whether §1322(c)(2) applies here depends on whether "the last payment on the original payment schedule . . . is due before the date on which the final payment under

the plan is due". *Id*. The plan in this case, which provides for monthly payments to the trustee over 36 months, was confirmed on February 28, 2018. See ECF No. 39. The final payment under the plan is due in February 2021. The parties dispute whether the last payment on the original payment schedules is due before then.

Voss argues that the notes on which his claim is based provide for multi-decade payment schedules that began in 2006, so §1322(c)(2) does not apply. Schroeder does not contest that the notes call for regular payments over that period. Instead she relies on the fact that the notes allow Voss to demand payment in full at any time. Both notes state, "The principal of this Note, together with any accrued but unpaid interest, shall be due and payable in full upon demand of [Voss]." Claim 4-1, pt. 2, at 1–2. Schroeder argues that under Wisconsin law this language makes all payments on both notes due immediately—i.e., before the last payment under the plan is due. Voss does not contest either that enforcement of the notes is governed by Wisconsin law or that the notes are payable on demand, as they clearly state. See Wis. Stat. §403.108(1)(a) ("A promise or order is payable on demand if . . . [i]t states that it is payable on demand . . . .").

Under Wisconsin law, a note that is "payable upon demand" is "due when the loan [is] made." See *Bruha v. La Crosse Plow Co.*, 260 N.W. 425, 426 (Wis. 1935); see also *London & Lancashire Indem. Co. v. Allen*, 74 N.W.2d 793, 795 (Wis. 1956) ("The note, being payable on demand, was due at once."); *Accola v. Giese,* 271 N.W. 19, 20 (Wis. 1937) ("Being payable upon demand, the note was due when the loan was made . . . ."); *Barry v. Minahan*, 107 N.W. 488, 489 (Wis. 1906) ("Upon well-established principles of law, the cause of action to recover money loaned upon demand accrues at the time of the loan."); *Turner v. Benjamin*, 43 N.W. 149, 150 (Wis. 1889) ("The law is well settled that a promissory note payable on demand, whether with or without interest, is due forthwith . . . ."). Therefore, the notes at issue here were due on August 25, 2006, when Schroeder and her ex-husband signed them.

Voss balks at this conclusion: "The due on demand provision does not change the original payment schedule, and therefore §1322(c) should not apply." ECF No. 78, at 2. Voss is right that the "original payment schedule" on his claim ends after "the date on which the final payment under the plan is due". §1322(c)(2). But he ignores that, under Wisconsin law, **all** of the payments on his claim were **due** when the loan was made, even if they were scheduled for later dates. See, e.g., *Due*, Black's Law Dictionary (11th ed. 2019) (defining "due" to include both "[i]mmediately enforceable" and "[o]wing or payable"). Thus, the last (and the first and every other) payment "on the original payment schedule for [the] claim"—which is secured only by the debtor's principal residence—was "due before the date on which the final payment under the plan is due", and §1322(c)(2) applies.

Subsection (c)(2) "permits a debtor to bifurcate an undersecured mortgage claim on the debtor's principal residence when the last payment on the original payment schedule is due before the final payment under the Chapter 13 plan." *In re Tekavec*, 476 B.R. 555, 556 (Bankr. E.D. Wis. 2012); see also *Hurlburt v. Black*, 925 F.3d 154, 161 (4th Cir. 2019) (en banc) ("Section 1322(c)(2) is best read to authorize modification of 'claim[s],' not just 'payment[s],' and therefore that a Chapter 13 plan may bifurcate a claim based on an undersecured homestead mortgage, the last payment for which is due prior to a debtor's final payment under a repayment plan, . . . and cram down the unsecured component." (alterations in original)). Consequently, § 1322(b)(2) does not prohibit Schroeder from modifying Voss's rights under her chapter 13 plan. See *In re Olmo-Claudio*, No. 16-71740, 2017 WL 3835798, *4 (Bankr. E.D.N.Y. Aug. 30, 2017).

B

Voss also argues that Schroeder's modification is impermissible under §1329: "Debtor cannot modify a confirmed plan under § 1329 to change the status of a secured claim to an unsecured claim." ECF No. 76, at 9 (citing *In re Adams*, 264 B.R. 901, 906 (Bankr. N.D. Ill. 2001)). Voss mischaracterizes the modification, which does not

reclassify his claim from secured to unsecured, but simply changes the treatment of the claim, as §1329 permits. See *In re Toliver*, 603 B.R. 420, 422–23 (Bankr. E.D. Wis. 2019).

Section 1329(a)(1) authorizes a request to modify a confirmed chapter 13 plan to "increase . . . the amount of the payments on claims of a particular class provided for by the plan". Schroeder's confirmed plan provides for Voss's secured claim. See *In re Boddy*, No. 19-23004, 2019 WL 4014727, at *2 (Bankr. E.D. Wis. Aug. 26, 2019) (citing *Rake v. Wade*, 508 U.S. 464, 473 (1993) ("The most natural reading of the phrase to 'provid[e] for by the plan' is to 'make a provision for' or 'stipulate to' something in a plan." (alteration in original))). And the modification increases payments on that claim.

What is more, as discussed above, the confirmed plan expressly provides that Schroeder "will file a feasible plan to address the mortgage claim" if mediation fails. ECF No. 8, at 5. This term, by which Schroeder and Voss are both bound, 11 U.S.C. §1327(a), affords Schroeder the right (and imposes on her a duty) to modify the plan to address Voss's secured claim in a manner permitted by §§1322 & 1325 upon the unsuccessful completion of mediation. And, as discussed above, treatment of that claim under §1322(c)(2) is permissible here.

II

The parties dispute the extent to which Voss's claim is a secured claim under §506(a) and thus whether it must be paid in full through the plan, given §1325(a)(5), absent Voss's acceptance of the plan as modified. As discussed above, Voss filed a proof of claim in October 2017 stating that the amount of his secured claim is $55,100 and an amended proof of claim in January 2019 stating that the amount of his secured claim is $175,000. Schroeder objects that Voss's amendment comes too late.

A

Schroeder "requests that the Court disallow the secured portion of the Amended Claim that exceeds the value of the secured portion of the Claim filed prior to plan confirmation, . . . as required pursuant to *Adair v. Sherman*, 230 F.3d 890 (7th Cir. 2000)."

ECF No. 58, at 5. *Adair*, she argues, prohibits creditors from changing the value of claims filed before plan confirmation after the court confirms the plan. ECF Nos. 77, at 3, & 79, at 2 ("And, as the claim was filed on October 24, 2017, prior to plan confirmation, Voss is bound by that value.").

Voss ignores *Adair*. He argues that any dispute over the extent to which his claim is secured is irrelevant because §1322(b)(2)'s anti-modification clause requires the plan to pay the entire claim, even if the amount of the claim exceeds the value of the collateral. ECF No. 76, at 6–7. For the reasons discussed above, the court rejects that premise. Voss continues:

> In the event the Court finds the valuation of the Residence relevant . . . , this Court should follow the holdings in cases from the Eleventh Circuit and the Fourth Circuit and find that confirmation of a plan does not establish the valuation of collateral property unless specific notice is given to inform creditors that such valuation will occur at confirmation.

*Id.* at 7 (citing *Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160 (4th Cir. 1993); *Green Tree Acceptance, Inc. v. Calvert (In re Calvert)*, 907 F.2d 1069 (11th Cir. 1990)). Voss's implicit suggestion that this court eschew binding Seventh Circuit precedent in favor of non-binding decisions from other circuits is not well taken.

*Adair*, however, does not carry the day for Schroeder. The plaintiff in *Adair* had filed a chapter 13 bankruptcy case, and the plan provided "that all allowed secured claims would be paid in full". 230 F.3d at 893. Before confirmation, a creditor filed proof of a secured claim, listing the value of the collateral, a vehicle, as "an amount greater than the car's original purchase price." *Id.* The debtor "did not object to the valuation of the car prior to confirmation." *Id.* After the chapter 13 case was dismissed, the debtor filed a complaint under the Fair Debt Collection Practices Act, "seeking damages for what he alleged was [the secured creditor's] practice of overvaluing collateral in proofs of claims filed with the bankruptcy court." *Id.* "The district court held that [the] action was barred because [the plaintiff] had failed to object to the valuation of the claim in the

bankruptcy court." *Id.* at 892. The Seventh Circuit affirmed, concluding that "when a proof of claim is filed prior to confirmation, and the debtor does not object prior to confirmation, the debtor may not file a post-confirmation collateral action that calls into question the proof of claim." *Id.* at 894–95 (footnotes omitted).

*Adair*, as the Seventh Circuit has since clarified, is a case about issue preclusion: the debtor's failure to challenge the creditor's claim **in the bankruptcy case** precluded the debtor from challenging that claim **in a later case**. See *In re Hovis*, 356 F.3d 820, 822 (7th Cir. 2004) ("Once the bankruptcy proceeding came to a conclusion, the accuracy of the creditor's claim was established."). "But issue preclusion has no role within a unitary, ongoing proceeding. *Adair* and similar decisions that arise from sequential suits are irrelevant within one suit. What matter[s] within a single suit are the deadlines set by statute and rule, plus the law of the case and judicial estoppel." *Id.*

B

The Federal Rules of Bankruptcy Procedure govern the filing of proofs of claim, see Fed. R. Bankr. P. 3002, 3003, 3004 & 3005, but no bankruptcy rule addresses amended proofs of claim.[1] The Seventh Circuit has directed that "[t]he disposition of a motion to amend a proof of claim falls within the sound discretion of the bankruptcy court." *In re Stavriotis*, 977 F.2d 1202, 1204 (7th Cir. 1992). In the closely related context of a late amendment to a proof of claim in a case under chapter 11, the Seventh Circuit observed:

> Leave to amend should be freely granted early in a case, but passing milestones in the litigation make amendment less appropriate. One milestone of particular significance in bankruptcy is the bar date. By then creditors must submit their proofs of claim. Once the claims are in, the

---

[1] Federal Rule of Civil Procedure 15, which governs amended pleadings, applies in adversary proceedings, but not in contested matters, such as claim objections, unless specifically ordered by the court after providing notice to the parties. See Fed. R. Bankr. P. 7015 & 9014(c).

bankruptcy court." *Id.* at 892. The Seventh Circuit affirmed, concluding that "when a proof of claim is filed prior to confirmation, and the debtor does not object prior to confirmation, the debtor may not file a post-confirmation collateral action that calls into question the proof of claim." *Id.* at 894–95 (footnotes omitted).

*Adair*, as the Seventh Circuit has since clarified, is a case about issue preclusion: the debtor's failure to challenge the creditor's claim **in the bankruptcy case** precluded the debtor from challenging that claim **in a later case**. See *In re Hovis*, 356 F.3d 820, 822 (7th Cir. 2004) ("Once the bankruptcy proceeding came to a conclusion, the accuracy of the creditor's claim was established."). "But issue preclusion has no role within a unitary, ongoing proceeding. *Adair* and similar decisions that arise from sequential suits are irrelevant within one suit. What matter[s] within a single suit are the deadlines set by statute and rule, plus the law of the case and judicial estoppel." *Id.*

B

The Federal Rules of Bankruptcy Procedure govern the filing of proofs of claim, see Fed. R. Bankr. P. 3002, 3003, 3004 & 3005, but no bankruptcy rule addresses amended proofs of claim.[1] The Seventh Circuit has directed that "[t]he disposition of a motion to amend a proof of claim falls within the sound discretion of the bankruptcy court." *In re Stavriotis*, 977 F.2d 1202, 1204 (7th Cir. 1992). In the closely related context of a late amendment to a proof of claim in a case under chapter 11, the Seventh Circuit observed:

> Leave to amend should be freely granted early in a case, but passing milestones in the litigation make amendment less appropriate. One milestone of particular significance in bankruptcy is the bar date. By then creditors must submit their proofs of claim. Once the claims are in, the

---

[1] Federal Rule of Civil Procedure 15, which governs amended pleadings, applies in adversary proceedings, but not in contested matters, such as claim objections, unless specifically ordered by the court after providing notice to the parties. See Fed. R. Bankr. P. 7015 & 9014(c).

parties may concentrate on determining their validity and providing for payment. How they will proceed depends on who claims how much. . . .

Confirmation of the plan of reorganization is a second milestone, equivalent to final judgment in ordinary civil litigation. Once that milestone has been reached, further changes should be allowed **only for compelling reasons**. . . .

*Holstein v. Brill*, 987 F.2d 1268, 1270 (7th Cir. 1993) (citations omitted) (emphasis added); see also *In re George*, 426 B.R. 895, 899 (Bankr. M.D. Fla. 2010) (applying *Holstein* in a chapter 13 case).

Here, the deadline for filing proofs of claim has passed, and the court confirmed the plan before Voss amended his proof of claim. The only reason Voss offers for his late amendment is that he believes the value of the residence has increased since confirmation because Schroeder used "certain inherited funds" to improve her residence, "including the installation of a new roof and new siding", and in December 2018 she received (and refused) a $155,000 offer to purchase the residence. ECF No. 76, at 2. Voss does not suggest that the property value stated in his original proof of claim was a mistake for which there is cause to allow a correction by way of an amended proof of claim. He simply seeks to capture the value of improvements to the property that Schroeder made after plan confirmation.

That the value of Schroeder's residence increased post-confirmation is not a compelling reason to allow Voss to amend his proof of claim. Courts disagree about when to value property securing a claim for purposes of chapter 13 plan confirmation: Some "hold[] that the proper date of valuation . . . is the date of the filing of the bankruptcy petition." E.g., *Marsh v. U.S. Dept. of Hous. & Urban Dev. (In re Marsh)*, 929 F. Supp. 2d 852, 854 (N.D. Ill. 2013). Others "find[] that . . . the appropriate timing for the valuation is the date of confirmation." E.g., *In re Williams*, 480 B.R. 813, 817 (Bankr. E.D. Tenn. 2012); see also §1325(a)(5)(B)(ii) (suggesting that "each allowed secured claim provided for by the plan" must be valued "as of the effective date of the plan"); 8 *Collier*

*on Bankruptcy* ¶1325.06[3][b][iv] (Richard Levin & Henry J. Sommer eds., 16th ed. 2019) (collecting cases) ("Although not all courts are in agreement on this point, the collateral should probably be valued as of the effective date of the plan", which is "normally . . . the date of the confirmation hearing."). But neither view supports Voss's request to value Schroeder's residence as of a year or more **after** confirmation (nor, for that matter, would either view support a request as belated as Voss's to value collateral as of the petition or confirmation date based on post-confirmation developments). Indeed, such a delayed valuation would arguably sanction an end run around §1329(a), which permits requests to modify a confirmed chapter 13 plan by the debtor, the trustee, or the holder of an allowed **unsecured** claim, but not by the holder of an allowed **secured** claim, to increase the amount of payments on a class of claims.

Voss also contends that he should be allowed to increase the value of his secured claim because the confirmed plan did not provide him with any notice that the treatment of his claim would depend on the value of the debtor's homestead. ECF No. 76, at 7–8. The confirmed plan specifically provides that "all mortgage claims" will be addressed through mediation and that if mediation fails, the "mortgage claim" will be addressed by plan modification, if necessary, at a later date. See ECF No. 8, at 5. Voss's claim is the only "mortgage claim"—i.e., it's the only allowed claim secured by a mortgage on the debtor's real property. Voss did not object to the plan's treatment of his claim and, thus, accepted the plan for purposes of §1325(a)(5)'s limitation on how the plan can provide for allowed secured claims. See *In re Foley*, No. 18-29998, 2019 WL 3933616, *4–6 (Bankr. E.D. Wis. Aug. 19, 2019).

Voss argues that "none of the Plan documents prior to confirmation provides . . . any notice that Debtor intends to treat [his] claim other than [as] a fully-secured, first-mortgage interest in the Debtor's principal residence pursuant to [§]1322(b)(2)." ECF No. 76, at 8. Presumably Voss means that he did not realize that Schroeder might modify the plan to treat his secured claim as permitted by §1322(c)(2). The plan, though,

does not state that Schroeder will pay the full amount owed if mediation fails. It states that, "[i]f the mediation is unsuccessful and there is no mortgage modification reached," Schroeder "will file a feasible plan to address the mortgage claim", ECF No. 8, at 5—that is, to address Voss's secured claim as allowed when the court confirmed the plan. Confirmed plans are binding on all creditors, §1327(a), even if the plan's treatment of a creditor's claim is less than perfectly clear. See *In re Harvey*, 213 F.3d 318, 322–23 (7th Cir. 2000). Voss should have "review[ed] the terms of [the] proposed plan and object[ed] if the terms [were] unacceptable, vague, or ambiguous." *Id.* at 322. His post-confirmation protestations about the plan's clarity come too late.

Finally, Voss argues, "None of the documents filed prior to confirmation of the Plan indicates that the valuation of the Residence will be determined by the Court at the time of confirmation." ECF No. 76, at 8. This is unsurprising: the court did not **determine** the value of the residence at the time of confirmation because the parties did not **dispute** its value until long after confirmation. Before confirmation, the parties were in apparent agreement about the residence's value, which both Voss's original proof of claim and Schroeder's original schedule A/B list as $55,100. Claim No. 4-1, at 2; ECF No. 1, at 10. No matter. The issue here is not whether the court valued the residence at the time of confirmation but what the amount of the allowed secured claim **was** as of the confirmation date—the latest date as of which bankruptcy courts in chapter 13 cases ordinarily determine the amount of secured claims.

Voss does not dispute the amount of the allowed secured claim or the value of the residence as of confirmation. Instead, he asks the court to allow him to increase the amount of his allowed secured claim after confirmation because, he says, the value of the property securing the claim has increased **since** confirmation due to events that occurred post-confirmation. As discussed above, leave to amend a proof of claim after confirmation of the plan should be allowed only for a compelling reason. Neither a

post-confirmation increase in the value of Schroeder's residence nor Voss's failure to seek a determination of the property's value before confirmation meet that standard.

III

**ORDERED**: Voss's objection to Schroeder's request to modify the confirmed plan is overruled. Schroeder's objection to Voss's claim is sustained: Voss's claim is allowed in the total amount of $109,886.36, consisting of an allowed secured claim of $55,100 and an allowed unsecured claim of $54,786.36.